## SUPREME COURT.

### JOHN KNOWLES agt. FRANCIS GEE and others.

Upon a motion under § 160 of the Code, to strike out irrelevant or redundant matter in an answer, which involved the construction and true intent and meaning of the 2d subdivision of § 149, which requires any new matter to be stated in ordinary and concise language, &c.; also of the 2d subdivision of § 142 which requires a complaint to contain a statement of the facts constituting the cause of action in ordinary and concise language, &c., *held*, that the Legislature intended to preserve as many of the rules of the common law as are consistent with the new forms of pleading, and that the facts required by the provisions of the Code, to be stated, are in general such facts as were required to be stated in pleadings at common law—that is, issuable facts, facts essential to the cause of action or defence, and not those facts and circumstances which merely go to establish such essential facts.

The cause of action or defence must be stated fully and clearly; general pleading is abolished. But the facts only, and not the mere evidence of facts, should be stated.

(*The question of pleading very fully reviewed and considered in reference to the requirements of the Code.*—SELDEN, Justice.)

*Wayne Special Term, April* 1850—The complaint in this case alleges, in a very clear and concise manner, that the plaintiff at the time of the acts complained of, was the owner and in possession of a certain lot of land with a crop of wheat growing thereon; under and by virtue of a deed of conveyance from the defendant Francis Gee; and that the defendants wrongfully and forcibly entered upon the said lot of land, and cut and carried away the wheat; claiming damages to the value of the wheat; and contains in all, about two folios.

The answer sets up in defence, that the deed mentioned in the complaint, was obtained by fraud; and goes into a history of the transactions between the parties, which ultimately led to the delivery of the deed, giving all the circumstances with the utmost minuteness and particularity of detail; extending to upwards of sixty folios.

The plaintiff moves to strike out a large portion of the answer, embracing the details of the evidence relied upon to sustain the charge of fraud.

J. C. SMITH, *for plaintiff.*

L. SHERWOOD, *for defendants.*

SELDEN, Justice.—The question presented by the motion is, how far the Legislature, by its recent reforms of the practice and pleadings in the courts of this state, intended to abrogate the rules heretofore applied to pleadings in the courts of common law, and to substitute those which prevailed in the Court of Chancery.

No more important question than this, in my judgment, can arise under our new system of legal proceedings, and none, the settlement of which will have a more material influence upon the convenient administration of justice in this state, while the present system continues.

It cannot be denied that the Legislature by adopting the *forms* of pleading heretofore in use in the Courts of Chancery, have given unequivocal evidence of a preference for those forms over those of the common law.

On the other hand, the abolition of the only court in which those forms were used, the transfer of their jurisdiction to the courts of common law, and the retaining of the forms and modes of trial peculiar to the latter, forbids the conclusion, that it was intended to subvert the entire system of rules which prevailed in the common law courts, and to substitute those of the obnoxious Court of Chancery.

In continuing two systems of jurisprudence, therefore, administered under different forms by different tribunals, and resolving them into one, it became indispensable to borrow something from each; and the object of the Legislature seems to have been, to select from both that which was most valuable; rejecting in each those portions which experience had proved to be productive of inconvenience. It is the duty of courts to aid in accomplishing this design, and in doing so they must necessarily look to the evils which existed, as well as to the means resorted to for their removal. The adoption of the forms of chancery pleadings, though not the necessary, was the natural consequence of adopting that principle in chancery jurisprudence, which recognized only one form of action for all cases. Many of the technical rules of the common law system of pleading may well have been considered as originating in and connected with, those distinctions between the different forms of action which were peculiar to that law. There are, however, some of those rules which are so well adapted to accomplish the end of all pleading, that I should find

it difficult to persuade myself that the Legislature could have intended to abrogate them.

No one, of the least experience in courts of justice, or even in the affairs of life, can have failed to observe that almost all legal controversies depend upon some one or two points out of which the whole difficulty has arisen. A difference upon a single point will often break up the harmonious relations between two individuals, and lead them into a protracted and expensive litigation. The point in dispute may arise either upon a matter of fact, or a question of law, but that once settled, the whole controversy ceases. The object of judicial proceedings is to ascertain and decide this disputed point; and it is essential to the termination of every legal contest, that it be evolved and distinctly presented for decision. This indispensable end of judicial pleading was attained in different modes by the civil and common law. The rules of the latter were designed to develope and present the precise point in dispute upon the record itself, without requiring any action on the part of the court for that purpose. Hence the parties were required to plead until their respective allegations terminated in a single *material* issue, either of law or of fact; the decision of which would dispose of the case. The result of this process was perfectly simple; but the system of rules by which it was attained, was necessarily artificial and complex. If always skilfully applied they would be sure to produce the end desired; but it would sometimes happen that through ignorance or mistake, an issue would be formed, or a point presented, not involving the real merits of the controversy, and a decision be thus produced contrary to the real justice and equity of the case. This was the sole vice of the system; but it was sufficient to create a strong feeling against what is termed special pleading.

Two remedies were applied. One was, a liberal allowance of amendments and repleaders; the other, general pleadings, under which parties were allowed the widest scope in the proof of facts not appearing upon the record. The latter expedient has had many advocates, but the evils to which it tended were so obvious that it is now generally condemned, and is repudiated by the Code.

By the civil law the parties were not required to plead to issue, but were permitted to spread all the facts in detail, constituting their cause of action or defence, at large upon the record; questions of law were not necessarily separated from questions of fact, but the whole case was presented in gross to the court for its determination.

This system, of course, avoided the evil which attended that of the common law, of sometimes causing the case to turn upon some false, im-

material, or technical issue; but it had other defects peculiar to itself. It threw upon the courts the labor of methodising the complex allegations of the parties, and developing the real points in dispute.

They might be aided more or less in this by the preparation of abbreviations or abstracts by the parties or their counsel; but this work would often be very imperfectly performed, and would of course leave much to be done by the court before it could arrive even at the real point to be decided.

There was an additional reason, too, why this system was not adopted in the common law courts in England. The determination of questions of law and of fact belonging to different tribunals, it was of course extremely convenient, if not indispensable, that they should be separated upon the record before the case was presented for trial. Besides, as little time could be afforded at *nisi prius*, to evolve from a complicated mass of facts the points about which alone the parties differed, the rules requiring all issues to be *certain* and *single*, would be sure to commend themselves to all who were in any way concerned in the disposition of such cases.

On the other hand, when the Court of Chancery took its rise, and began to take cognizance of judicial contests, the mode of trial by jury not appertaining to that court, the inconveniences resulting from mingling questions of law and of fact, to be referred to different tribunals, was not felt by it. As the chancellor could take all the time requisite for the fullest examination, and as he assumed originally to eschew the strict and technical rules of the common law, and to proceed upon the broad equities of the case, he naturally encouraged the presentment of the facts at large. Hence the adoption of the forms of the civil law. Now no one will dispute that to disencumber the record of all extraneous matters, and of every thing irrelevant and immaterial, and thus present to the judicial mind the naked point to be passed upon, is a highly desirable object; nor will it be denied by any one really acquainted with the subject, that the system of common law pleading was admirably adapted to accomplish that end. Nevertheless, it had one defect which has effected its overthrow in this state. It gave advantages to the skilful over the unskilful, which the system of the civil law did not afford. It may be safely assumed that it is this which has subverted it; because its offensive but harmless fictions, and its objectionable subtleties might all have been easily lopped off, without trenching upon that vital principle, which required all issues to be *single, certain* and *material.*

But while it is conceded that common law pleading, *as a system*, is supplanted, it is unnecessary to admit that every vestige of its valuable

rules has been swept away. It has been my object in this brief and imperfect sketch of the distinguishing characteristics of the two systems, so to exhibit the value of some of those rules, as to show that wisdom requires them to be retained, and the Legislature must have so intended, so far as could be done consistently with the main object in view, to wit: that of so simplifying the mode of pleading that it could not be perverted by chicanery and cunning to purposes of injustice. The code itself bears evidence of a due appreciation by the Legislature of the importance of certainty and precision in the statement of a charge or a defence, as well as of a separation of various defences, so that each shall be singly presented. See sections 150 and 160, adopting in these respects the principles of the common law, and enforcing them in a summary manner by motion instead of the more dilatory and expensive proceeding by demurrer.

Upon what, then, rests the position that it was the intention of the Legislature, in its recent reforms, to substitute entire chancery pleadings for that of the common law?

The code has nowhere so said; it is a mere inference from the adoption in substance, of the forms, or rather *names* of the pleadings in the Court of Chancery. This circumstance, however, is more than counterbalanced by the destruction of the court itself—together with the transfer of its jurisdiction; and by the consideration that the complex issues presented by chancery pleadings, are incompatible with trials by jury.

It is said that the form of trial by jury exists in full vigor in the state of Louisiana and other places where civil law pleadings are used. Do those who assert this know how far that system has been modified in those places to adapt it to the changed mode of trial; or what expedients have been resorted to for the purpose of extricating the real matters in issue from the statements in gross of the parties. I am myself uninformed on these points; but of this I feel assured, that to say that the burden of extracting from such pleadings the issues to be tried, of separating the questions of law from those of fact, and of ascertaining what is admitted and what denied, can be thrown upon the judge at the circuit, with any convenience to the public, or safety to the parties, is to discard all common sense, and disregard the plainest deductions of reason. The prolixity of legal proceedings has been one great source of complaint; and a prominent object of the recent reform was supposed to be to simplify and abridge them; an object which would scarcely be attained by permitting pleadings of the kind adopted by the defendant in this case.

This motion is made under section 160 of the code, to strike out the

matter objected to as irrelevant or redundant, and the precise question to be passed upon is, whether the defence here is stated in accordance with the true intent and meaning of the 2d subdivision of section 149, which requires any new matter to be stated in ordinary and concise language, &c. This subdivision, and the 2d subdivision of section 142, which requires a complaint to contain a statement of the facts constituting the cause of action in ordinary and concise language, &c., must, as a matter of course, receive the same construction. Having come to the conclusion from the preceding reasoning, that the Legislature intended to preserve as many of the rules of the common law as are consistent with the new forms of pleading—I am prepared, of course, to hold that the facts required by these provisions of the code to be stated, are in general such facts as were required to be stated in pleadings at common law; that is, issuable facts; facts essential to the cause of action or defence; and not those facts and circumstances which merely go to establish such essential facts. The cause of action or defence must be stated fully and clearly, it is true; general pleading is no longer allowed. But the facts only, and not the mere evidence of facts, should be stated. In putting this construction upon the provisions of the code, I believe I am sustained by the opinion of Mr. Justice WELLES, in the case of *Shaw* agt. *Jacques*, (4 How. Pr. Rep. 119,) at least so far as this case is concerned, which is one purely of common law cognizance.

The motion must be granted with leave to the defendant to amend his answer so as to conform to the principles of this decision, provided he serves such amended answer within ten days after notice of the order to be entered upon this motion.

---

## SUPREME COURT.